UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHANE S. SIMPKINS,

      Plaintiff,

v.                              Case No: 2:13-cv-586-FtM-29CM

SCOTT  HALL,  Captain  and
JEREMY HARDIN, Officer,

      Defendants.

_____/

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. #42), filed on May 11, 2015. Plaintiff filed a Response in opposition (Doc. #60) on October 16, 2015. This matter is ripe for review.

**I.**

Plaintiff Shane Simpkins initiated this action proceeding *pro se* by filing an Amended Civil Rights Complaint Form (Doc. #1) pursuant to 42 U.S.C. § 1983 concerning events that occurred during his pre-trial detention at the Lee County Jail. The Amended Complaint identifies two defendants: Captain Scott Hall and correctional officer Jeremy Hardin. (Doc. #1.) Plaintiff alleges claims against defendants for excessive force under the Fourteenth Amendment, cruel and unusual punishment based on the conditions of his confinement under the Fourteenth Amendment, retaliation, and

interference with access to court under the First Amendment. (See id.)  The Court previously dismissed plaintiff's interference with access to court claim for failure to state a claim. (Doc. #32.)

Defendants move for summary judgment, asserting plaintiff's claims fail because they lack any evidentiary basis and are contradicted by the evidence in the record.  (Doc. #42, ¶ 2.) Defendants also assert they are entitled to qualified immunity against plaintiff's claims for excessive force, cruel and unusual punishment, and retaliation.  (Id. ¶¶ 3-6.)  In support of their motion, defendants attach the following exhibits: (1) Affidavit of Scott Hall (Doc. #42-1); (2) Records of Plaintiff's Disciplinary Reports (Docs. #42-2, #42-3, #42-4); (3) Corrections Bureau Policy and Procedures SOP # 4.03 (Doc. #42-5); (4) Affidavit of Jeremy Hardin (Doc. #42-6); and (5) Corrections Bureau Policy and Procedures SOP # 4.05 (Doc. #42-7).

In Response, plaintiff opposes defendants' motion for summary judgment, asserting there are outstanding discovery disputes and Defendant Hardin lied in his affidavit.  (Doc. #60.)  Plaintiff provides the following exhibits in support of his response: (1) Corrections Bureau Policy and Procedures SOP # 4.05 revised 12/09/2009 (Doc. #60-1); (2) Corrections Bureau Policy and Procedures SOP # 4.05 revised 05/17/2013 (Doc. #60-2); (3) Affidavits of other inmates who allegedly witnessed Plaintiff's

abuse (Doc. #60-3); (4) Affidavit of Jeremy Hardin (Doc. #60-4.); (5) Records of Plaintiff's Disciplinary Reports (Doc. #60-5); (6) Affidavits of Jeremy Hardin (Doc. #60-6); (7) Plaintiff's Inmate Request forms (Docs. #60-7, #60-9); (8) Plaintiff's Disciplinary Appeal Records (Doc. #60-8); (9) Affidavit of Plaintiff (Doc. #60-9); (10) Plaintiff's First Request for Admissions of Defendant Scott Hall (Doc. #61-1); and (11) Plaintiff's First Interrogatories to Defendant Jeremy Hardin (Doc. #61-2).

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

According to the Amended Complaint, plaintiff entered the custody of the Lee County Sheriff in April of 2011.  (Doc. #1, p. 5.)  Plaintiff alleges that in May of 2011, he received a false disciplinary report for destruction of property, and in June of 2011, he received nine false disciplinary reports.  (Id. at 5.)

Plaintiff alleges correctional officer Hardin began targeting him, harassing him, and conducting routine cell searches of his cell. During these cell searches, plaintiff alleges that Hardin would pull Plaintiff's boxers up in order to expose his genitalia. (Id. at 6.)

Plaintiff alleges that in August of 2011, defendant Hardin forcefully made plaintiff remove a tongue ring that plaintiff was going to later have medically removed. (Id. at 9-10.)  During that incident, plaintiff alleges Hardin "slammed" him up against a wall and gave him a black eye. (Id. at 9.)

Plaintiff alleges that in September of 2011, he was moved from his cell to Disciplinary Close Management (DCM), where he remained until December of 2011 pursuant to defendant Halls' directive. (Id. at 11.)  Plaintiff claims that DCM was a punishment made up by Hall and Hardin. (Id.)  Hardin told plaintiff he was placed in DCM so that Hardin could "baby sit" him. (Id.)  While in DCM, plaintiff alleges inter alia that he was held in complete isolation, given no personal property (sometimes he was allowed a toothbrush and occasionally a Bible), not allowed visits with his criminal defense attorney, allowed no recreation time, not allowed a cup to drink from, and was provided only one pair of boxers, one jumpsuit, one mat (which Hardin later took away), one blanket, and one pair of slides. (Id. at 11-13.)

Plaintiff alleges that his food was served to him on a three-slot Styrofoam tray, instead of the usual five-slot tray.  Sometimes a slot was missing food, so plaintiff went hungry.  (Id. at 13.) Plaintiff alleges Hardin searched his cell daily during this time and harassed him physically, mentally, and sexually.  (Id. at 11.) Plaintiff explains that the false disciplinary reports stopped during this time because it did not matter anyway.  (Id. at 12.)

Toward the end of December 2011, a major visited plaintiff's cell, and shortly thereafter plaintiff was moved from disciplinary confinement.  (Id. at 14.)  Plaintiff claims that the visits from Hardin stopped until April of 2012.  (Id. at 14.)  In April of 2012, Hardin conducted another cell search and told plaintiff that he was "not untouchable."  (Id.)  Plaintiff then heard rumors from other inmates that Hardin made promises of additional food to any inmate who attacked plaintiff.  (Id. at 14-15.)

During this time, plaintiff claims that he attempted to file inmate grievances to no avail.  (Id. at 10.)  Plaintiff alleges that he was told not to grieve and told that "the more you complain, the more we []¹ with you."  (Id.)  Plaintiff summarizes that "there is no way to explain what happened to me over those months except 'torture.'"  (Id. at 15.)  As relief, plaintiff seeks "declaratory

---

¹Expletive language not contained herein.

judgment," "compensatory damages," "punitive damages," and "monetary compensation." (Id. at 6-7.)

## IV.

### A. Discovery Dispute

Plaintiff alleges that there are outstanding discovery disputes because defendants have not properly responded to several of plaintiff's discovery requests. (Doc. #60, pp. 1-3.) The Court denied plaintiff's motion to compel discovery (Doc. #57), finding defendants had provided plaintiff with the requested discovery to the extent it was available and relevant. Plaintiff failed to request an extension of time to complete discovery or file any additional discovery motions with the Court.

Plaintiff's request that the Court deem admitted certain interrogatories that allegedly went unanswered by defendants is denied. Pursuant to the Case Management and Scheduling Order (Doc. #37) discovery was due by March 23, 2015, and any discovery related motions were due by March 30, 2015. Therefore, the Court finds that discovery is closed and plaintiff's request is untimely. Furthermore, despite plaintiff's allegations regarding the unresolved discovery disputes, plaintiff was able to fully respond to defendants' motion for summary judgment. (Doc. #60; Doc. #61.)

### B. Official Capacity Claims

The Amended Complaint alleges claims against the defendants, in both their individual and official capacities. (Doc. #59.) Section 1983 claims against officers in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985). Accordingly, the Section 1983 claim against the defendants in their official capacity is properly understood as a cause of action against the government entity they represent. See Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005).

A local government entity may be held liable under Section 1983, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). To prevail on a Section 1983 claim against a municipality, "a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a policy or custom that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Whittington v. Town of Surfside, 269 F. App'x 918, 921 (11th Cir. 2008). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or

she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). A custom is a practice that is so settled and permanent that it takes on the force of law. Monell, 436 U.S. at 691. Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." Depew v. City of St. Mary's, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986); See Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007).

According to the Amended Complaint, in September of 2011, plaintiff was moved from his cell to DCM where he remained until December of 2011 pursuant to Halls' directive. (Doc. #1, p. 11.) Plaintiff alleges that the DCM rules did not exist at that time and Hall made them up. (Id.) In his Response, plaintiff alleges there was a different policy in effect from June 1, 2011 – April 25, 2012 which did not allow for DCM detention. (Doc. #60, p. 4.) Plaintiff alleges a revised policy was enforced on May 17, 2013 which contains a DCM policy and was an attempt to cover up the injustice that occurred to plaintiff two years earlier. (Id.)

Plaintiff also claims defendant Hall tried to cover up plaintiff's placement in DCM. As proof, plaintiff relies on "Exhibit J" which is Lee County Corrections Bureau Disciplinary Appeal / Sanction Modification Reviews of plaintiff (Doc. #60-8). Plaintiff suggests that numerous inconsistencies in these

documents prove that defendants were attempting to cover up that plaintiff was placed on DCM even though it did not exist until two (2) years later.  Finally, plaintiff claims that when he brought his grievances up to "the Major" he was moved off DCM.

Rather than showing a custom or policy, plaintiff's allegations are based on an absence of a policy existing at the time he was placed on DCM.  Specifically, plaintiff alleges the punishment defendants inflicted on him by placing him in DCM did not exist at the time he was disciplined.  Upon review of the record, the Court finds no policy that violates federal law on its face.  Plaintiff fails to show any specific policy or custom that was responsible for the alleged violations of plaintiff's constitutional rights.  Additionally, plaintiff does not show that Lee County Sheriff's Office had a long standing custom of making up rules and punishments in order to harass and abuse inmates.  Furthermore, plaintiff does not allege or show a custom of excessive force or retaliation.  To the contrary, plaintiff's allegations center around claims that he was targeted by Hardin and Hall and singled out by their abusive behavior.  None of the inmate affidavits submitted by plaintiff show that other inmates were harassed in a similar manner by the defendants.

Plaintiff's allegations, and the record, fail to establish unconstitutional conduct that was a persistent and wide-spread

practice.   There is no evidence of a custom or policy that was the moving force of defendant's constitutional violations.   See Grech v. Clayton County, 335 F.3d 1326, 1320-30 (11th Cir. 2003). Accordingly, defendants are entitled to summary judgment as to plaintiff's claims against them in their official capacity.

## C. Individual Claims: Qualified Immunity

Defendants assert they are entitled to qualified immunity against plaintiff's claims for excessive force, cruel and unusual punishment, and retaliation.   The Court agrees.

Under the doctrine of qualified immunity, government officials performing discretionary functions may not be held individually liable for civil damages so long as their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)).   The Court looks at the evidence in the light most favorable to the plaintiff, and determines whether the record shows that the defendant violated plaintiff's federal rights and "whether the right was clearly established" at the pertinent time by the pre-existing law.   See Saucier v. Katz, 533 U.S. 194 (2001).

### (1)  Performing Discretionary Function

"[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1248 (11th Cir. 2004); <u>see also</u> <u>Harris v. Coweta County, Ga.</u>, 433 F.3d 807, 811 (11th Cir. 2005).   In determining whether an individual was performing a "discretionary function" the Court's inquiry focuses on "whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Id.</u> at 1265.

Defendant Hardin was employed as an officer in the Lee County Sheriff's Office and worked in the Lee County Jail.  (Doc. #42-6.)  Pursuant to his normal job duties and jail policies, Hardin conducted searches of plaintiff's cell and submitted disciplinary reports for rule violations.  (<u>Id.</u>)  Similarly, defendant Hall was employed as a captain in the Lee County Sheriff's Office and worked at the Lee County Jail (Doc. #42-1.)  Hall's role of reviewing disciplinary appeals is pursuant to his job duties as Captain.  (<u>Id.</u>)  Accordingly, there is no dispute that both Hardin and Hall at all relevant times were acting within their discretionary authority.  Thus, the burden shifts to plaintiff to show that his clearly established constitutional rights were violated.

**(2)  Violation of Clearly Established Rights**

Once it is established that the official was acting within his discretionary authority the Court follows a two-part analysis in determining whether qualified immunity applies. <u>Vinyard v. Wilson</u>, 311 F.3d at 1340, 1346 (11th Cir. 2002). The first part asks "whether [the] plaintiff's allegations, if true, establish a constitutional violation." <u>Id.</u> (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002)) (internal quotation marks omitted) (alteration in original). The second part asks "whether the right was clearly established." <u>Id.</u> (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). Courts have discretion to decide the order in which to address the two parts. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). Nevertheless, "[b]oth elements must be satisfied for an official to lose qualified immunity." <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1254 (11th Cir. 2010).

### a. Excessive Use of Force

Excessive force claims involving a pre-trial detainee fall under the purview of the Fourteenth Amendment to the United States Constitution. <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996). In deciding whether the force used was, constitutionally speaking, excessive, this Court applies an objective standard. <u>Kingsley v. Hendrickson</u>, _____ U.S. _____, 135 S. Ct. 2466, 2472 (2015). "[O]bjective reasonableness turns on the 'facts and

circumstances of each particular case.'"  Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  The Supreme Court has provided a non-exhaustive list of factors to consider when determining reasonableness:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.

Furthermore, a "court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. at 2473.  A court "must . . . give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'"  Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (citations omitted).

Plaintiff alleges Hardin used excessive force when he demanded plaintiff remove his tongue ring despite it being "frozen shut" and that it could not be taken out without being broken. (Doc. #1 pp. 9-10.)  Plaintiff explained to Hardin that it would require medical intervention to remove it, but Hardin "slamed [sic]" plaintiff up against the wall, then grabbed plaintiff's arm

and bent it behind his back leading plaintiff into the holding cells. (Id.) When plaintiff tried to look toward Hardin to ask where he was taking him, Hardin "ramed [*sic*]" the palm of his hand into plaintiff face saying "face forward" (Id.) As a result of this, plaintiff had a black eye. (Id.) Once plaintiff was in the holding cell Hardin said "take the tongue ring out now or I am gonna wip [*sic*] your ass." (Id. p. 10.) Plaintiff states that he again tried to explain to Hardin that he needed medical to remove the tongue ring but Hardin "made [plaintiff] open [his] mouth and break the tongue ring in two pieces and pulled it out forcefully" which "hurt extremely bad". (Id.)

Hardin denies plaintiff's account of the events altogether. (Doc. #42-6.) According to Hardin, he searched plaintiff's cell on August 19, 2011 and saw plaintiff was in the possession of a tongue ring, which was prohibited by jail policy. (Doc. #42-6 ¶ 11.) Hardin states plaintiff initially refused the demand to remove the tongue ring but eventually complied and removed the tongue ring himself. (Id.) Hardin states he did not use physical force to gain compliance, and plaintiff did not appear to be in pain when he removed the tongue ring. (Id.)

Whether Hardin's conduct was objectively unreasonable depends on what plaintiff was doing at the time, and whether the force Hardin used against plaintiff, judged from Hardin's perspective,

was excessive in relation to a legitimate governmental objective, such as maintaining order in the jail.

Viewing the facts in favor of plaintiff, Hardin gave plaintiff a verbal order (remove the tongue ring) which plaintiff did not comply with, resulting in plaintiff being shoved against the wall and Hardin bending plaintiff's arm behind his back while moving him to another cell.  Plaintiff admittedly turned his head around while being escorted from his cell by Hardin, which resulted in Hardin using force to gain plaintiff's compliance.  Plaintiff admits to refusing to comply with Hardin's orders and looking up at Hardin while being escorted to another cell.  Plaintiff does not allege that he was cooperating with the officer or complying with Hardin's instructions when Hardin used force.

Furthermore, plaintiff does not allege more than a de minims injury.  Plaintiff alleges he received a black eye as a result of this encounter and that the removal of the tongue ring was "extremely painful."  However, plaintiff does not allege that his injuries required medical attention or that he even requested medical care, and there is no evidence in the record of plaintiff receiving medical care for his injuries.  See Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) ("[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity.").

The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no, or merely minor, medical treatment is not a constitutional violation, even where the prisoner was restrained and no further force was necessary.  <u>See</u>, <u>e.g.</u>, <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1460–61 (11th Cir. 1997); <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1556 (11th Cir. 1993), <u>modified</u>, 14 F.3d 583 (11th Cir. 1994).  Furthermore, a conclusory allegation that the prisoner suffered serious injury should be discounted, and the absence of further evidence of injury justifies the conclusion that the use of force on the prisoner was minimal.  <u>Brown v. Smith</u>, 813 F.2d 1187 (11th Cir. 1987); <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533 (11th Cir. 1990).

Drawing all inferences in favor of plaintiff, the Court finds that Hardin acted reasonably under the circumstances.  After evaluating the factors set forth in <u>Kingsley</u>, the Court finds the force Hardin used was reasonable considering that plaintiff was resisting an order, Hardin used force for the purpose of gaining compliance, and plaintiff only suffered a de minimus injury.  135 S. Ct. at 2473 (citing <u>Graham</u>, 490 U.S. at 396).  The Court finds the facts alleged by plaintiff are not sufficient to show that the force Hardin used against plaintiff was objectively unreasonable so as to violate plaintiff's constitutional rights under the due process clause of the Fourteenth Amendment.  <u>See</u> <u>Bennett v. Parker</u>,

898 F.2d 1530, 1533 (11th Cir. 1990).  (When a prisoner creates a disturbance by failing to follow a prison guard's instructions, it is not unreasonable for the guard to shove him against the wall.) Accordingly, the Court finds Hardin is entitled to summary judgment on plaintiff's claims of excessive force.

### b. Sexual Harassment

Plaintiff also alleges his constitutional rights were violated because he was subject to sexual harassment by Hardin during cell searches.  Specifically, plaintiff alleges during a search on June 28, 2011, Hardin raised plaintiff's boxer's up as far as they could go and his privates were hanging out.  (Doc. #1, p. 6.)  Plaintiff says he was forced to stay like that up against a wall until Hardin was done searching his cell.  (Id.)  Then, on August 17, 2011, Hardin conducted another cell search and pulled plaintiff's boxer's way up again and made a sexually degrading remark to plaintiff.  (Id. p. 9.)  According to plaintiff, Hardin would do this every time he searched plaintiff's cell.  (Id.)  Then on August 21-23 2011, Hardin searched plaintiff's cell and again sexually harassed him with his boxers.  (Id. p. 10.)

Defendant Hardin denies sexually harassing plaintiff. Defendants assert that while there is no evidence in the record to support plaintiff's allegations, even if true, Hardin's conduct

does not rise to the level of a constitutional violation.  (Doc. #42, p. 20.)

The Eleventh Circuit, joining other circuits, has recognized that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Constitution.  See Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006); see also Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir. 1999) (same); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997); Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997).  "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."  Boddie, 105 F.3d at 861 (citation and quotation omitted).

However, the alleged condition must be objectively serious enough to amount to a constitutional deprivation.  See Bell, 441 U.S. at 539 n.21 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); Boxer X, 437 F.3d at 1111; see also Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002); Cnty. of Sacramento v. Lewis, 523 U.S. 833, 848 (1998) (even though a trivial use of force may be cognizable under state tort law, "the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States").  Under the Fourteenth Amendment, an

injury can be "objectively, sufficiently serious" only if there is more than de minimis injury.  See Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002); Boxer X, 437 F.3d at 1111.

The Court finds that plaintiff's allegations that defendant raised his boxers "beyond profession," exposing his privates while conducting cell searches, does not suggest more than a de minimis injury.  See, e.g., Boxer X, 437 F.3d at 1111 (female prison guard's alleged solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, did not present more than de minimis injury, and therefore did not give rise to a claim under the Eighth Amendment); see also, e.g., Moton v. Walker, 545 F. App'x 856, 860 (11th Cir. 2013) (unpublished) (even if defendant prison guard lacked a legitimate penological purpose in conducting a strip search of plaintiff inmate, and guard's alleged smile revealed a "subjectively culpable state of mind," there was no evidence that inmate suffered any injury that was objectively more than de minimis) (citing Boxer X, 437 F.3d at 1111); Washington v. Harris, 186 F. App'x 865, 866 (11th Cir. 2006) (unpublished) (inmate's allegations that he suffered momentary pain, "psychological injury," embarrassment, humiliation, and fear after he was subjected to officer's offensive and unwanted touching were de minimis injuries which did not rise to the level of constitutional harms, and although officer's conduct was

inappropriate and vulgar, it was not repugnant to humanity's conscience); Jackson v. Madery, 158 F. App'x 656, 661–62 (6th Cir. 2005) (unpublished) (allegation of rubbing and grabbing of prisoner's buttocks in a degrading manner did not amount to an Eighth Amendment violation); Joseph v. U.S. Fed. Bureau of Prisons, 232 F.3d 901, 2000 WL 1532783, at *1–2 (10th Cir. 2000) (unpublished) (no Eighth Amendment violation stated where plaintiff alleged prison official "touched him several times in a suggestive manner and exposed her breasts to him"); Boddie, 105 F.3d at 861 (a few incidents involving verbal harassment, touching, and pressing without consent are not sufficiently serious to establish Eighth Amendment violation); Jones v. Culinary Manager II, 30 F. Supp. 2d 491, 493, 497–98 (E.D. Pa. 1998) (allegation that guard pinned plaintiff to box, ground his pelvis against plaintiff's buttocks, and threatened sex was not sufficiently serious to be an Eighth Amendment violation); Bonner v. Hall, No. 3:11cv5/MCR/CJK, 2012 WL 5357275, at *3 (N.D. Fla. Oct. 1, 2012) (unpublished) (allegations that correctional officer asked to see inmate's penis, followed by the officer's licking his lips, does not indicate anything more than a de minimis injury and thus fails to state a constitutional claim), Report and Recommendation Adopted by 2012 WL 5357188 (N.D. Fla. Oct. 30, 2012) (unpublished); Allen v. McDonough, No. 4:07cv469/RH/GRJ, 2011 WL 4102525, at *5–

6 (N.D. Fla. Aug. 17, 2011) (unpublished) (officer's making sexual comments and gesture to inmate during inmate's shower did not rise to the level of an Eighth Amendment violation), Report and Recommendation Adopted by 2011 WL 14103081 (N.D. Fla. Sept. 14, 2011) (unpublished); Robinson v. Davis, No. 3:06cv403/RV/EMT, 2009 WL 153162, at *13 (N.D. Fla. Jan. 22, 2009) (unpublished) (defendant officer's one-time touching of inmate's rear, even when combined with a threat of sexual battery, was not objectively harmful enough to establish an Eighth Amendment violation).

Plaintiff's showing does not rise to the level of objectively serious conduct necessary to establish a constitutional violation. See Johnson v. Breeden, 280 F.3d at 1321. Accordingly, the Court finds Hardin is entitled to qualified immunity from plaintiff's claims of sexual harassment. Therefore, the Court grants summary judgment as to plaintiff's claims against Hardin for sexual harassment.

### c. Conditions of Confinement

Plaintiff's constitutional rights as a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment. See, e.g., Kingsley, 135 S. Ct. at 2475. A pretrial detainee may be subjected to the restrictions and conditions of the detention facility so long as those conditions do not amount to punishment or otherwise violate the Constitution. See Bell v. Wolfish, 441

U.S. 520, 536-37 (1979). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Id. at 537. Absent an institution's expressed intent to punish a detainee, this determination "generally will turn on whether there is an alternate purpose rationally connected to the restriction," and whether the restriction appears excessive based on the alternate purpose supporting it. Id. In other words, if a condition or restriction is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'' Id. at 539-40. However, if it "is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court may infer that the purpose" is punishment. Id. at 539.

The Supreme Court recognizes that a prisoner may challenge a condition of confinement. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A two prong showing is required: an objective deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities" and a subjective showing that he official had a "sufficiently culpable" state of mind. Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted). "Extreme deprivations" are required to make out a claim for an unconstitutional condition of confinement. Id. at 1304. And, the state of mind required for a conditions of confinement claim is "deliberate indifference." Id.

"[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment to convicted persons." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (quoting Hamm v. DeKalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985)). Also, pretrial detainee complaints are evaluated against the totality of confinement conditions to determine if there is constitutional deficiency.   See Hamm v. DeKalb County, 774 F.2d 1567, 1575-76 (11th Cir. 1985).

In this case, plaintiff challenges the conditions of his confinement, asserting he was moved to DCM as a punishment made up by the defendants. (Doc. #1, p. 11.)  Plaintiff states all of his personal property, clothes, legal work, mail, pictures, and hygiene supplies were taken from him and he was put in a cell with one pair of boxers, one jumpsuit, one mat, one blanket, and one pair of slides. (Id.)  Plaintiff alleges he was not allowed access to his legal papers and his mail was stored in his property box. (Id.)  Plaintiff says he was also denied canteen, visits, phone calls, and access to the law library.  (Id.)  Plaintiff alleges his outgoing mail was screened, and some of it was not allowed to be sent out. (Id. p. 13.)  Plaintiff was not allowed any recreation time or allowed to go to church or correspond with the Chaplin at

the facility. (Id.) Plaintiff also states he was denied food because his food was served to him on a three-slot Styrofoam tray, instead of the usual five-slot tray. (Id.) Sometimes a slot was missing food, so plaintiff went hungry. (Id.) Plaintiff alleges he was not allowed a cup which prevented him from drinking juice and milk which deprived him of an important part of his daily diet. (Id.)

Defendants assert that plaintiff cannot establish a Fourteenth Amendment violation based on the alleged conditions of his confinement because there are no allegations or evidence of extreme conditions posing an unreasonable risk of serious damage to his future health and safety. (Doc. #42, p. 22.) Defendants assert the only conditions that could be construed as posing a health risk are plaintiff's claims that he was denied food and a cup so he could drink milk and/or juice. (Id. at 21.) Defendants allege that the conditions complained of may have caused plaintiff discomfort but did not injure plaintiff of pose a serious risk to plaintiff's health. (Id.)

In his affidavit, defendant Hall states that under the policy in place during plaintiff's incarceration, an inmate could be placed in DCM by recommendation of the Disciplinary Committee for rule violations. (Doc. #42-1, ¶ 6.) An inmate could be placed on DCM for up to 30 days per violation. (Id.) Defendants provide a

copy of the DCM policy and procedure which specifies the restrictions placed on inmates in DCM. (Doc. #42-7.)

Plaintiff was put into DCM as a result of disciplinary hearings for violations of the jail rules and policies. The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546 (1979). While the articles provided to plaintiff may not have been to the liking or standard plaintiff desired, neither his health nor safety was affected. Taking plaintiff's allegations as true, there has not been an "extreme" deprivation of life's basic necessities evidenced nor a risk of serious harm in this action. Furthermore, plaintiff does not state that he suffered any physical injury due to the conditions of his confinement. See Rhodes v. Chapman, 452 U.S. 337, 346 (1981) ("[T]he Constitution does not mandate comfortable prisons."); Hernandez v. Florida Dep't of Corr., 281 F. App'x 862, 865 (11th Cir. 2008) (No Eighth Amendment violation when prisoner denied lunch over five month period because no serious risk to the prisoner's health.)

Although the conditions alleged by plaintiff might qualify as restrictive, they do not pose an unreasonable risk of serious

damage to his future health and safety.  The Court is therefore hard-pressed to find that the restrictions imposed equated to conditions that could be viewed as punishment or inhumane. Plaintiff fails to present any evidence that he suffered an extreme deprivation of any kind, or that defendants were deliberately indifferent to his safety.  As such, the Court finds no constitutional violation regarding the conditions of plaintiff's confinement.  Therefore, defendants are entitled to qualified immunity from plaintiff's Fourteenth Amendment Conditions of Confinement claim.  Accordingly, summary judgment in granted in favor of defendants.

### d. First Amendment Retaliation

The First Amendment prohibits correctional officials from retaliating against an inmate for exercising his right to free speech by filing inmate grievances.  Moton v. Walker, 545 F. App'x 856, 860 (11th Cir. 2013) (citing Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th

Cir. 2011) (internal quotations omitted); Moton v. Cowart, 631 F.3d 1337, 1341-42 (11th Cir. 2011). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." Cowart, 631 F.3d at 1341 (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)). In other words, "[a]n inmate may maintain a cause of action under 42 U.S.C. § 1983 by showing that a prison official's actions were the result of the inmate's having filed a grievance concerning the conditions of his imprisonment." Walker, 2013 WL at *4 (citing O'Bryant, 637 F.3d at 1215).

Plaintiff alleges violations of his First Amendment rights based on defendants' alleged acts of retaliation after plaintiff received numerous "bogus" Disciplinary Reports (DR's). Specifically, plaintiff claims that he was given false DR's by defendant Hardin. The Amended Complaint alleges plaintiff received a DR for Destruction of State Property on May 5, 2011 and was found guilty. (Doc. #1, p. 5.) Plaintiff alleges he appealed the decision but never received an answer. (Id.) Plaintiff also asserts that he received nine DR's on June 5, 2011 because of a fire in his cell that was started by his roommate. (Id.) According to plaintiff, his roommate admitted starting the fire, but plaintiff got blamed anyway. (Id.) Plaintiff was found guilty

and sentenced to 270 days in Disciplinary Confinement for the infraction. (Id. at p. 6.) Plaintiff appealed the decisions but never received a response. (Id.) Plaintiff received another DR on June 28, 2011 because Hardin found contraband during a search. (Id.) Plaintiff alleges his roommate told Hardin the contraband was his not plaintiff's but plaintiff received more DR's anyway. (Id.) On August 17, 2011, Hardin found holes in the cell across the hall from plaintiff's cell and a digging tool. (Id. at p. 9.) Although plaintiff did not received a DR for that, he did get DR's for other "non-sense stuff" because Hardin believed plaintiff was the mastermind. (Id.) On August 19, 2011, Hardin wrote plaintiff DR's for refusing an order and threating him when ordering plaintiff to remove his tongue ring. (Id. at p. 10.) On August 21, 25, 26, 2011, Hardin searched plaintiff cell and issued plaintiff more DR's. Then plaintiff was moved to DCM. (Id. at p. 11.) After moving to DCM, plaintiff says he received a DR "every now and then" from Hardin but no one else. (Id.) Then in April of 2012, plaintiff received another DR from Hardin. (Id. at p. 14.)

Plaintiff attaches eight (8) sworn affidavits from inmates who allegedly witnessed plaintiff's unlawful punishment and abuse by defendants. (Doc. #60, p. 5.) Relevant to the First Amendment claim for retaliation, plaintiff submits an affidavit of Justin

Tetreavlt who attest that the book, *Desert Gold*, was his and he does not think it was fair that plaintiff was punished for hiding it.  (Doc. #60-3.)  In addition, plaintiff submits the affidavits of Lloyd Jones and Brian Casey who attest they witnessed plaintiff receiving unjustified DR's.  (<u>Id.</u>)  Plaintiff also attaches the affidavit of Allen Cummins who attests that plaintiff started the fire in the cell and he had nothing to do it with it.  (<u>Id.</u>)  Plaintiff alleges Cummins' statement was altered by defendants.

Plaintiff also alleges that he requested to appeal several of his DR's but the requests always ended up with defendant Hall and were denied.  Plaintiff submits grievances that he filed inquiring about DR appeals that he had filed but had not received responses to.  (Doc. #60-7.)

Defendants allege the plaintiff was afforded all the necessary due process protections during the disciplinary process. (Doc. #42, p. 23-24.)  According to defendants, each DR filed against plaintiff was reviewed by a supervisor to determine if it was authorized (Docs. #42-2; 42-3.)  A copy of each DR which listed the charges was provided to plaintiff.  (<u>Id.</u>)  Each DR was investigated by an independent officer.  (<u>Id.</u>)  Plaintiff was provided a hearing before three disciplinary committee members where he had the right to be present, make a statement, and call witnesses. (<u>Id.</u>)  The Disciplinary Committee reached its decision

based on the evidence presented at the hearing including the written statements of Hardin. (Id.) Plaintiff was found guilty for each infraction and had the opportunity to appeal those decisions to the Corrections Bureau Commander. (Id.)

Defendants attach a copy of the Corrections Bureau Policy and Procedures for Disciplinary Process/Hearing/Action which details the procedural due process inmates are entitled to. (Doc. #42-5.) In his affidavit, Hardin attests that inmates who repeatedly violate jail rules are subject to more frequent searches. (Doc. #42, ¶ 5.) Hardin also attests that he was never informed by another inmate that the contraband found during searches of plaintiff's cell belonged to that inmate rather than plaintiff. (Id. ¶ 7.) During plaintiff's time in DCM, Harden was assigned to Recreation. (Id. ¶ 12.) As part of his duties, he was required to assist in DCM including searching the cells of every inmate in DCM once a week. (Id.) Hardin attests he never falsified a disciplinary report related to plaintiff or threated false disciplinary reports against him. (Id. ¶ 17.) Hardin attests that he did not file a DR against plaintiff in retaliation for any grievance he may have filed. (Id. ¶ 19.)

In this case, the record establishes that plaintiff received a detailed written notice of the charges against him and of his rights during the investigations and hearings. Plaintiff had the

opportunity to present evidence and witnesses, as stated in the notice provided to him before the disciplinary hearings. Plaintiff also received written statements of the findings against him and the evidence relied upon by the disciplinary committee. He also received other protections such as the right to request staff assistance and to appeal the committees' decision. Among other things, the written statements of the reporting officer constituted evidence before the disciplinary committee that supported the committees' decisions.

Based on the record, the Court finds that plaintiff received procedural due process in these disciplinary hearings. See Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974); Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). The Court now turns to whether plaintiff can establish a retaliation claim for false disciplinary charges after being afforded due process and found guilty of the actual conduct in the charges.

In O'Bryant, 637 F.3d at 1215-1216, the Eleventh Circuit stated that a plaintiff could not proceed on a retaliation claim that a DR was falsely given when plaintiff received due process and was found guilty of the conduct at issue in the DR.

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the

infraction in a disciplinary report.  Whether an inmate
actually committed the charged infraction or whether the
disciplinary report falsely accuses the inmate are
questions of fact that are decided by the disciplinary
panel.  In the particular circumstances here, O'Bryant
has suffered adverse action (here 30 days' disciplinary
confinement) because he actually violated the prison
rules and not because of his earlier grievances.  To
find otherwise would render the prison disciplinary
system impotent by inviting prisoners to petition the
courts for a full retrial each time they are found guilty
of an actual disciplinary infraction after having filed
a grievance.  Because he was guilty of the disciplinary
charges resulting in the disciplinary harm at issue,
O'Bryant's retaliation claim fails.

Id.

In the present case, evidence was presented to support all of

plaintiff's DR's.  (See Docs. 42-2, 42-3, 42-4.)  Plaintiff has

not established that the DR's were overturned.  Furthermore, it is

clear from the record that plaintiff would have received the DR's

in question regardless of any alleged retaliatory motive of

defendant Hardin.  Plaintiff was afforded due process and found

guilty of the infractions alleged in the DR's.  Therefore, based

on O'Bryant, plaintiff cannot state a claim for First Amendment

retaliation.  Accordingly, summary judgment is granted in favor of

defendants.

Accordingly, it is now

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. #42) is **GRANTED**. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida this __15th__ day of April, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-2
Copies: All Parties of Record